Filed 6/24/25; on transfer

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>PATRICK ALLEN TRENT,<br><br>　　　　Defendant and Appellant. | C096306<br><br>(Super. Ct. No. STK-CR-FE-1997-0006966)<br><br>OPINION ON TRANSFER |

APPEAL from a judgment of the Superior Court of San Joaquin County, Lauren P. Thomasson, Judge. Reversed in part and affirmed in part.

The Law Office of Brad K. Kaiserman and Brad K. Kaiserman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Erin Doering, Eric L. Christoffersen, Deputy Attorneys General, for Plaintiff and Respondent.

---

\* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II and III.

In 1999, a jury convicted defendant Patrick Allen Trent of first degree murder (Pen. Code,[1] § 187) and street terrorism (§ 186.22, subd. (a)), but found not true the enhancements that defendant had personally used a knife (§ 12022, subd. (b)(1)), and that the murder had been committed for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1).) The trial court sentenced defendant to 25 years to life plus eight months. This court affirmed that judgment in an unpublished opinion in 2001.[2] (*Vasquez, supra*, C032492).) Defendant's first degree murder conviction was later reduced to second degree murder in light of *People v. Chiu* (2014) 59 Cal.4th 155, resulting in the reduction of defendant's aggregate term to 15 years to life plus eight months.

Thereafter, in July 2020, defendant filed a petition for resentencing pursuant to former section 1170.95 (now section 1172.6),[3] which the trial court granted in a written ruling issued on February 28, 2022. On March 28, 2022, the trial court redesignated the murder conviction as assault with force likely to cause great bodily injury with a great bodily injury enhancement and resentenced defendant to an aggregate term of six years eight months, comprised of: the middle term of three years for the felony assault, plus three years consecutive for the great bodily injury enhancement, plus a consecutive eight months (one-third the middle term) for the street terrorism conviction.

Defendant timely appealed, complaining that the trial court prejudicially erred in: (1) failing to retroactively apply Assembly Bill No. 333 (2021-2022 Reg. Sess.)

---

[1] Undesignated statutory references are to the Penal Code.

[2] We granted defendant's motion to incorporate by reference the appellate record in *People v. Vasquez et al*. (Sept. 25, 2001, C032492) (nonpub. opn.) (*Vasquez*). (Cal. Rules of Court, rule 8.147(b).)

[3] Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute. Defendant filed his petition under former section 1170.95, but we will cite to current section 1172.6 throughout this opinion.

(Assembly Bill No. 333) (Stats. 2021, ch. 699) to his substantive gang conviction and (2) imposing a great bodily injury enhancement to the redesignated offense. Finally, defendant requested that we correct the abstract of judgment to reflect that defendant's convictions were by jury, rather than by plea. The People opposed defendant's first two arguments, but agreed the abstract of judgment requires correction.

In October 2023, we issued a partially published decision agreeing with defendant that he was entitled to the retroactive application of Assembly Bill No. 333, requiring reversal of his section 186.22 conviction and remand for further proceedings. (*People v. Trent* (2023) 96 Cal.App.5th 33 (*Trent*).) In the unpublished portion of our opinion, we agreed with the parties that the abstract of judgment should be corrected to reflect conviction by jury. We otherwise affirmed the judgment. (*Ibid.*) Both parties appealed, and the California Supreme Court remanded the matter with directions to vacate our opinion and reconsider the cause in light of *People v. Arellano* (2024) 16 Cal.5th 457 (*Arellano*). Having done so, we again grant defendant's requests to correct the abstract of judgment and reverse his section 186.22 conviction. We will also vacate defendant's great bodily injury enhancement and remand the matter for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

A. *The Underlying Murder*

We summarize the evidence from our previous appellate opinion for context. Defendant and his codefendant Nico Luciano Vasquez were convicted of murdering Primotivo Villasana, a heroin addict and former member of "Northern Structure," a criminal street gang. The People theorized "the murder was the gang execution of a dropout to advance the defendants' status in Northern Structure." (*Vasquez, supra*, C032492.) In support of this theory, the People presented evidence that Tony Giminez, the leader of Northern Structure in Stockton who had turned state's evidence, identified defendant and Vasquez as Villasana's killers. Defendant and Vasquez killed Villasana because he was on the gang's "hit list." (*Ibid.*)

3

Vasquez's former girlfriend B.T.[4] testified that Vazquez and defendant helped her move into an apartment near the murder scene on the day of the murder. The pair ran into Villasana at the door to her apartment, and the three men stayed outside talking and drinking while B.T. unpacked her belongings. "Vasquez came into the apartment twice—once to get more beer, and once to take something she could not see from a kitchen drawer that contained knives. She later identified a broken knife handle and knife blade found at the scene, and testified her knives were not broken when she last saw them." (*Vasquez, supra*, C032492.)

"Vasquez told [B.T.] he was going for a walk around the corner. She watched defendants and Villasana head toward the park as it was starting to get dark. Vasquez returned about 45 minutes later, went to the drawer, and got a butcher knife with a wooden handle. He told [B.T.] the first knife had broken because it was too skinny. Vasquez said he needed the knife to take care of his business. [B.T.] testified Vasquez was mad, out of breath, but uninjured at the time.

"Vasquez returned 15 or 20 minutes later, looking like he had been fighting. His shirt was torn, and he was bleeding. He had a bloody knife with him, which [B.T.] put in the sink. Vasquez told her to clean it with alcohol or Clorox. He also told [B.T.] to say she had not seen him if the police came. [B.T.] cleaned the wound on Vasquez's hand, and put a towel over it. Vasquez took her car, saying he was going to take [defendant] home, then return. Vasquez did not return to the apartment that night.

"[B.T.] saw Vasquez at his sister's house several days after Villasana was killed. He showed [B.T.] a newspaper article about the murder and explained, 'This is what I did last night.' He said he threw the clothes he was wearing into a creek behind his mother's house. Vasquez later told [B.T.] he cut Villasana's throat, and one of the knives broke

_____

**4**       To protect her privacy, we refer to the witness by her initials. (Cal. Rules of Court, rule 8.90(b)(10)).

during the assault.  Vasquez and [defendant] met with [B.T.] to discuss what to tell police about the night of the murder.

"At some point after the murder, [B.T.] watched while [defendant] had a star tattooed under his eye.  Vasquez said, 'He's a killer now.'  [B.T.] also heard Vasquez tell [defendant] 'he done killed a man.' " (*Vasquez, supra*, C032492.)

Xavier Lozano testified as part of a plea agreement.  According to Lozano, "he previously held the highest position in Northern Structure, responsible for overall security inside and outside of prison.  He testified that Vasquez had been a gang member for three or four years, and [defendant] was a sympathizer.  While Lozano was imprisoned at Pelican Bay, he received instructions that all dropouts in Stockton should be killed.  He relayed the information directly to Giminez and Vasquez upon his parole.  Lozano explained that by killing Villasana, defendants would gain status within Northern Structure, and possibly become eligible for membership in Nuestra Familia." (*Vasquez, supra*, C032492.)

Defendant testified in his defense, acknowledging he left B.T.'s apartment with Vasquez and Villasana to get more beer.  The other men were behind him, and defendant turned around to see Vasquez and Villasana wrestling on the ground.  Vasquez repeatedly punched Villasana, but defendant denied seeing a knife or "kicking, punching, or touching Villasana in any way." (*Vasquez, supra*, C032492.)  Defendant left the park, and Vasquez eventually caught up.  Defendant admitted obtaining the star tattoo, but denied it held "special significance." (*Ibid.*)

B.    *Legal Background*

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437) significantly limited the scope of the felony-murder rule and eliminated liability for murder under the natural and probable consequences doctrine through two key provisions.  (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*).)  First, Senate Bill No. 1437 amended section 189 so

5

that "[d]efendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life.' " (*Strong,* at p. 708, citing § 189, subd. (e)(3).)  Second, it amended section 188 to provide that when the felony-murder rule does not apply, a principal in the crime of murder can only be convicted where they acted "with malice aforethought," and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); see *People v. Gentile* (2020) 10 Cal.5th 830, 842-843.)

Senate Bill No. 1437 also established a new procedure to allow defendants who could not have been convicted under the new law to petition the sentencing court to vacate their murder conviction and resentence them on any remaining counts. (See § 1172.6, subd. (a); *Strong, supra,* 13 Cal.5th at p. 708.)  After receiving a petition containing the required information, "the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' " (*Strong*, at p. 708, citing § 1172.6, subd. (c).)  If the defendant makes a prima facie showing of entitlement to relief, the court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c), (d)(3).)

Effective January 1, 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill No. 775) amended section 1172.6 to clarify certain aspects of the law, including that (1) the burden of proof at a resentencing hearing under this section is "on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder" under California law as amended by Senate Bill No. 1437, and (2) "[a] finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3); see also Stats. 2021, ch. 551, § 1, subd. (c).)  Senate Bill No. 775 also clarified that the trial court's role in a section 1172.6 proceeding is to act as an independent fact finder and determine, in the first instance, whether the petitioner

6

committed murder under the law as amended by Senate Bill No. 1437. (*People v. Clements* (2022) 75 Cal.App.5th 276, 294, 297.)

"If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3).) "The petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes if the petitioner is entitled to relief pursuant to this section, murder or attempted murder was charged generically, and the target offense was not charged. Any applicable statute of limitations shall not be a bar to the court's redesignation of the offense for this purpose." (*Id*., subd. (e).)

C.      *The Resentencing Proceedings*

On July 1, 2020, defendant filed a petition for resentencing pursuant to section 1172.6. On June 7, 2021, the trial court determined defendant had made a prima facie showing of eligibility for relief. On February 28, 2022, the trial court determined that the record of conviction (which was the total record before it) was insufficient to establish beyond a reasonable doubt that defendant "meets one of the three criteria set forth in [section 189, subdivision] (e)(1)-(3) to be convicted of murder under the law as amended."

In their resentencing briefs, the parties disagreed over the redesignation and ultimate sentence. The People argued the murder should be redesignated as assault with a deadly weapon (§ 245, subd. (a)(1)) or assault with force likely to cause great bodily injury. (§ 245, subd. (a)(4).) The People also requested an enhancement for personal infliction of great bodily injury (§ 12022.7, subd. (a)) and that the court impose an upper term sentence. Defendant argued the murder should be redesignated as simple misdemeanor assault (§ 240) or battery. (§ 242.) Defendant further argued amendments made by Assembly Bill No. 333 should be applied retroactively, requiring the reversal of

7

his section 186.22 conviction. Finally, defendant requested the imposition of a low or midterm sentence in light of legislative changes made to triad sentencing.

At the resentencing hearing on March 28, 2022, defendant argued that the People had not proven the great bodily injury enhancement beyond a reasonable doubt because the record did not disclose whether the victim's broken nose was a displaced fracture. Ultimately, the trial court denied defendant's request to vacate the gang conviction, finding section 1172.6 concerned the murder conviction and "doesn't talk about resentence as if the defendant had not been convicted." The trial court then redesignated the murder conviction to assault with force likely to produce great bodily injury (§ 245, subd. (a)(4)),[5] found a broken nose constituted great bodily injury, and added an enhancement for great bodily injury. (§ 12022.7, subd. (a).) The court then resentenced defendant to an aggregate term of six years eight months, comprised of: the middle term of three years for the felony assault, plus three years consecutive for the great bodily injury enhancement, plus a consecutive eight months (one-third the middle term) for the gang conviction. Defendant timely appealed.

DISCUSSION

I

*Retroactive Application of Assembly Bill No. 333*

In the published portion of our May 2023 opinion, we agreed with defendant that the trial court erred in failing to retroactively apply the changes brought about by Assembly Bill No. 333 to his gang conviction, requiring reversal of that conviction and remand for possible retrial on that count. (*Trent, supra*, 96 Cal.App.5th at pp. 41-44.)

---

[5] While the trial court's original pronouncement identified section 245, subdivision (a)(4), as the applicable subdivision for this count, it was later amended to reflect that at the time of defendant's original conviction, assault with force likely to produce great bodily injury was actually found in section 245, subdivision (a)(1).

8

The California Supreme Court's direction that we "reconsider the cause in light of" *Arellano* does not implicate our previous analysis on this issue. Accordingly, much of our previous analysis is restated here.

The People do not dispute that Assembly Bill No. 333 applies retroactively to all nonfinal judgments, or that reversal and remand for further proceedings would be required if Assembly Bill No. 333 applies retroactively. We concur with these concessions. (See, e.g., *People v. Lopez* (2025) 17 Cal.5th 388, 393, 396 [*Estrada*[6] retroactivity applies to Assembly Bill No. 333]; *People v. Cooper* (2023) 14 Cal.5th 735, 742, 746-747 (*Cooper*) [reversing because trial court's failure to instruct on new substantive requirements brought about by Assembly Bill No. 333 was not harmlessness beyond a reasonable doubt].) The People dispute, however, that vacatur of defendant's murder conviction under section 1172.6 renders defendant's section 186.22, subdivision (a), conviction nonfinal for these purposes. We find that defendant has the better argument here.

At the time of our original decision, there was no published authority addressing whether the granting of a petition for resentencing pursuant to section 1172.6 renders a substantive gang offense nonfinal for purposes of the retroactive application of Assembly Bill No. 333's amendments.[7]

---

[6]    *In re Estrada* (1965) 63 Cal.2d 740.

[7]    Assembly Bill No. 333, "effective January 1, 2022, amended the substantive offense of active participation 'in a criminal street gang' as well as the sentencing enhancement available for a felony committed 'for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members.' (Stats. 2021, ch. 699, § 3; Pen. Code, § 186.22, subds. (a), (b)(1).)" (*Cooper, supra*, 14 Cal.5th at p. 738, fn. omitted.)

9

There is, however, authority holding that these amendments apply in the context of a recall and resentencing conducted pursuant to former section 1170, subdivision (d).[8] (*People v. Salgado* (2022) 82 Cal.App.5th 376, 378.) *Salgado* reasoned that the California Supreme Court recognized, in *People v. Padilla* (2022) 13 Cal.5th 152 (*Padilla*), that " 'once a court has determined that a defendant is entitled to resentencing, the result is vacatur of the original sentence, whereupon the trial court may impose any appropriate sentence.' (*People v. Padilla,*[*supra*, at p.] 163.)" (*Salgado,* at p. 380.) "Accordingly, when Salgado was resentenced under former section 1170, subdivision (d), his criminal judgment was 'no longer final.' (*People v. Montes* (2021) 70 Cal.App.5th 35, 47-48 ['[R]esentencing pursuant to section 1170, subdivision (d), effectively vacated the earlier judgment.'].)" (*Ibid*.)

The People argue that *Salgado*'s reliance on *Padilla* was misplaced, and that *Padilla* actually supports the nonapplication of Assembly Bill No. 333 to a long-final gang conviction. We do not read *Padilla* this way.

*Padilla* addressed "whether Proposition 57 [(the Public Safety and Rehabilitation Act of 2016) (Proposition 57)] applies during resentencing when a criminal court sentence imposed on a juvenile offender before the initiative's passage has since been vacated." (*Padilla, supra*, 13 Cal.5th at p. 158.) In *Padilla*, the defendant "was originally sentenced before Proposition 57 was enacted, but his judgment later became nonfinal when his sentence was vacated on habeas corpus and the case was returned to the trial court for imposition of a new sentence." (*Padilla*, at p. 158.) Thus, the majority concluded, that Proposition 57 applied to his resentencing. (*Ibid*.)

---

[8] Assembly Bill No. 1540 (2021-2022 Reg. Sess.) moved former section 1170, subdivision (d), to a newly created section 1170.03. (Stats. 2021, ch. 719, §§ 3.1, 6.) Assembly Bill No. 200 (2021-2022 Reg. Sess.) renumbered section 1170.03 as section 1172.1. (Stats. 2022, ch. 58, § 9.) These changes are not relevant to this appeal.

10

*Padilla* explained, "A case is final when 'the criminal proceeding as a whole' has ended ([*People v.*] *Esquivel* [(2021)] 11 Cal.5th [671,] at p. 678) and 'the courts can no longer provide a remedy to a defendant on direct review' [Citation.] When Padilla's sentence was vacated, the trial court regained the jurisdiction and duty to consider what punishment was appropriate for him, and Padilla regained the right to appeal whatever new sentence was imposed. His judgment thus became nonfinal, and it remains nonfinal in its present posture because the Court of Appeal ordered a second resentencing, from which the Attorney General now appeals. There is no 'constitutional obstacle' to applying the *Estrada* presumption to his case. (*Esquivel*, at p. 679.)" (*Padilla, supra*, 13 Cal.5th at pp. 161-162.)

*Padilla* rejected the proposed distinction between "cases that are nonfinal because the defendant is undergoing retrial or resentencing" and those " 'not yet final on initial review.' " (*Padilla, supra*, 13 Cal.5th at p. 162.) The court reasoned, "*Estrada* made no such distinction. The *Estrada* presumption stems from our understanding that when the Legislature determines a lesser punishment is appropriate for a particular offense or class of people, it generally does not wish the previous, greater punishment—which it now deems 'too severe'—to apply going forward. [Citation.] We presume the Legislature intends the reduced penalty to be used instead in all cases in which there is no judgment or a nonfinal one, and in which it is constitutionally permissible for the new law to control. (See *ibid*.; [*People v.*] *Esquivel, supra*, 11 Cal.5th at p. 677.)" (*Padilla*, at p. 162.)

The Attorney General highlights the last paragraph of the majority's opinion, which addressed the People's argument that applying Proposition 57 to a defendant's vacated sentence would be inconsistent with principles limiting modification of judgment after initial finality. Therein, *Padilla* stated, "[T]he right and remedy we recognize today does not allow Padilla to raise claims unrelated to his sentence." (*Padilla, supra*, 13 Cal.5th at p. 169.) Rather, the defendant would receive a transfer hearing wherein the

11

juvenile court would decide whether "criminal adjudication is appropriate for the murder of his mother and conspiracy to kill his stepfather." (*Id*. at p. 170.) "Whatever potential that [transfer] hearing may have for reducing his punishment (the nonfinal part of his judgment), it does not authorize or constitute relitigation of guilt." (*Ibid*.)

The Attorney General, however, fails to provide authority showing that once defendant's collateral attack successfully vacated his murder conviction—entitling him to redesignation and resentencing (§ 1172.6, subd. (e))—he was not then entitled under *Padilla* to the retroactive application of ameliorative laws that benefitted him. (See *Padilla, supra*, 13 Cal.5th at pp. 161-163; *People v. Guillory* (2022) 82 Cal.App.5th 326, 335-336 [defendant's original judgment remained final through the granting of an order to show cause and would only be subject to retroactivity if his conviction was vacated pursuant to section 1172.6, subd. (d)].) We believe the final paragraph of *Padilla* was intended to allay concerns that the defendant, in that case, would request a new adjudication of his guilt in the juvenile court itself and was not intended to divorce the court's retroactivity analysis from instances in which the retroactive relief would result in a more favorable sentence because the underlying change required reversal of a count of conviction for a possible retrial.

It is worth noting that other intermediate appellate courts have determined that resentencing pursuant to a section 1172.6 petition reopens the judgment for purposes of retroactivity of ameliorative laws. (See *People v. Keel* (2022) 84 Cal.App.5th 546, 551 [following the vacatur of defendant's murder conviction, Proposition 57 and Senate Bill No. 1391 (2017-2018 Reg. Sess.) applied to defendant's resentencing pursuant to section 1172.6, subd. (d)(3)]; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 996 [same] (*Ramirez*).) This is so because, even though a defendant's conviction may have been final before the petition, section 1172.6 provides "a defendant who succeeds on a resentencing petition is entitled to 'vacat[ur] [of] the murder . . . conviction and to recall [of] the sentence and resentenc[ing] . . . on any remaining counts *in the same manner as if*

12

*the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence*.' (§ 1172.6, subd. (d)(1)[, italics added]; see also *id*., subd. (d)(3) ['If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.'].)" (*Keel,* at p. 564.) Thus, once the petition for resentencing was granted and defendant's murder conviction vacated, the judgment was no longer final for purposes of *Estrada* retroactivity, entitling a defendant to the benefit of ameliorative legislation. (*Id*. at p. 565; *Ramirez,* at pp. 996, 998-999.)

This conclusion also is consistent with the "full resentencing rule," which affords a resentencing court the authority to conduct " 'a full resentencing as to all counts . . . so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*Ramirez, supra*, 71 Cal.App.5th at p. 999, citing *People v. Buycks* (2018) 5 Cal.5th 857, 893-894.) Resentencing is not limited to "just the portion [of the sentence] subjected to the recall." (*Buycks,* at p. 893.) Rather, "the full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant." (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425.)

Like the court in *Ramirez*, we see no reason to distinguish *Estrada* retroactivity for purposes of a judgment vacated under former section 1170, subdivision (d), versus one vacated pursuant to section 1172.6, subdivisions (d) and (e). (*Ramirez, supra*, 71 Cal.App.5th at pp. 998-999.) Once defendant obtained vacatur of his murder conviction, he had a right to be resentenced "on any remaining counts in the same manner as if the petitioner had not previously been sentenced." (§ 1172.6, subd. (d)(1).) Thus, he was entitled to retroactive application of Assembly Bill No. 333. (*Padilla, supra*, 13 Cal.5th at pp. 161-163.)

We accept the People's concession that reversal of the section 186.22, subdivision (a), conviction is required in light of our conclusion concerning retroactivity.

13

Accordingly, we will reverse this conviction and remand so that the People may elect whether to retry that offense in compliance with the amendments brought about by Assembly Bill No. 333. (*Cooper, supra*, 14 Cal.5th at pp. 739, 746-747.)

## II

### *Inclusion of an Uncharged Enhancement in the Redesignation*

Defendant brought a multifaceted challenge to the trial court's decision to impose a great bodily injury enhancement on his redesignated conviction, complaining the imposition of this uncharged enhancement violated his state and federal rights to a jury trial, due process, and notice of the charges. We rejected these claims in the unpublished portion of our October 3, 2023, opinion. (*Trent, supra*, 96 Cal.App.5th 33.) The California Supreme Court has directed this court to reconsider the issue in light of *Arellano, supra*, 16 Cal.5th 457.

In *Arellano*, the California Supreme Court held "that the limited resentencing procedure under section 1172.6, subdivision (e) does not permit a court to impose a sentencing enhancement or allegation unless the enhancement or allegation was pled and either proven to the trier of fact or by the defendant's admission in open court. (See § 1170.1, subd. (e).)" (*Arellano*, 16 Cal.5th at p. 464.) Here, the information did not allege, nor was the jury asked to determine, whether the victim suffered great bodily injury as defined in section 12022.7, subdivision (a). Nonetheless, when the trial court redesignated defendant's murder conviction to assault with force likely to produce great bodily injury (§ 245, subd. (a)(4)), the court added an enhancement for great bodily injury. (§ 12022.7, subd. (a).) This violates *Arellano*. (*Arellano*, at p. 464.) We therefore vacate the great bodily injury enhancement. Given that this matter is already being remanded for further proceedings consistent with this opinion, the parties may brief the trial court on remand to determine whether a full resentencing hearing consistent with the limitations set forth in *Arellano* is required.

14

## III

### *The Abstract of Judgment*

Finally, the parties concur that the amended abstract of judgment must be corrected to reflect defendant's convictions were by jury, rather than by plea. We will direct the trial court on remand to prepare an amended abstract of judgment to reflect that defendant's convictions were by jury, not by plea.

## DISPOSITION

We vacate defendant's section 12022.7, subdivision (a), enhancement associated with his redesignated assault count. Defendant's section 186.22, subdivision (a), conviction is reversed, and the matter is remanded to the trial court for possible retrial of that count in compliance with the amendments brought about by Assembly Bill No. 333. The trial court also is directed to prepare an amended abstract of judgment, which shall reflect these changes and that defendant's convictions had been by jury, not by plea. The judgment is otherwise affirmed.

_____\s\_____,
Krause, J.

We concur:

\_\_\_\_\_\s\_____,
Earl, P. J.

\_\_\_\_\_\s\_____,
Robie, J.

15